# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND'S RESTAURANT CORPORATION d/b/a RAYMOND'S (MONTCLAIR) and RAYMOND'S RIDGEWOOD, LLC,<br><br>   Plaintiffs,<br><br> v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF AMERICA and ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>   Defendants. | Civil Action:  2:24-cv-11189 (SDW-JRA) |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT

---

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN
A Professional Corporation
425 Eagle Rock Avenue, Suite 202
Roseland, NJ 07068
Telephone: 973-509-7500
Attorneys for Plaintiffs

**On the Brief:**
**Francis X. Garrity, Esq.**
Attorney ID# 009471973

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES .......................................................................... ii

PRELIMINARY STATEMENT ......................................................................1

LEGAL ARGUMENT.....................................................................................3

RAYMOND'S IS AFFORDED $25,000 IN COVERAGE UNDER
EACH OF THE THREE TRAVELERS POLICIES............................................3

   A.   Introduction – the Coverage Issue ...........................................3

   B.   The Employee Dishonesty Provisions In the Travelers Policy ...............4

   C.   Out of State Cases Addressing Non-Cumulation Clauses
      In the Context of First Party Employee Dishonesty ...............................6

   D.   New Jersey Supreme Court's Decision in Spaulding Composites........12

   E.   The New Jersey Supreme Court's Treatment of Employee
      Dishonesty Coverage in Auto Lenders ...................................15

   F.   The Travelers Policy Should Be Reformed to Meet the
      Reasonable Expectations of the Insured .................................17

CONCLUSION ...............................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

A.B.S. Clothing Collection, Inc. v. Home Ins. Co.,
 41 Cal. Rptr. 2d 166 (Ct. of App. Cal. 1995).......................................7, 11

Arc in Haw. v. DB Ins. Co., 544 F. Supp. 3d 1014 (Dist. Haw. 2021).............10, 11

Auto Lenders Acceptance Corporation v. Gentilini Ford, Inc.,
 181 N.J. 245 (2004)................................................................15, 16, 20, 23

Carter-Wallace, Inc. v. Aetna Ins. Co., 154 N.J. 312 (1998)...................................13

Cincinnati Ins. Co. v. Sherman & Hemstreet, Inc.,
 581 S.E. 2d 613 (GA Ct. App. 2003)....................................................9, 11

City of Miami Springs v. Travelers Indem. Co.,
 365 So.2d 1030 (FL App. 1978) ...............................................................11

Great American Indemnity Co. v. State,
 229 S.W. 2d 850 (Tex. Civil App. 1950)..................................................11

Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475 (1961) .................................16, 19

Lehrhoff v. Aetna Cas. & Sur. Co., 271 N.J. Super. 340 (App. Div. 1994)............19

Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437 (1994)............................13, 14

Spaulding Composites Co. v. Aetna Cas. & Sur. Co.,
 176 N.J. 125 (2003)................................................................6, 7 12, 14, 23

Vargas v. Hudson County Board of Elections, 714 F. Supp. 714
 (D.N.J. 1989), aff'd. 949 F. 2d 665 (3d Cir. 1991)................................21

White Dairy Co. v. St. Paul Fire and Marine Insurance Co.,
 222 F. Supp. 1014 (N.D. Ala. 1963).......................................................11

## **PRELIMINARY STATEMENT**

This declaratory judgment action presents as a straightforward case. The plaintiff policyholder, a restaurant, purchased insurance coverage for Employee Dishonesty under three policies from the defendant insurer. Each policy provided that the restaurant was covered to a limit of $25,000 for loss occurring during the policy period. During each year the three policies were in effect, an employee of the restaurant embezzled sums in excess of $25,000. The policyholder contends that it is entitled to recover $25,000 under each policy, or a total of $75,000. The defendant insurer contends that the maximum obligation it owes is $25,000 because each policy included a non-cumulation clause, i.e. a provision stating that regardless of the number of years the insurance was in force or the number of premiums paid, "no limit of insurance cumulates year to year or period to period."

The insurer suggests that the policyholder's demand for coverage for losses sustained in each of the three years constitutes an effort by the policyholder to "cumulate" the limit of insurance in violation of the policy provision. On the contrary, the policyholder is not asking the insurer to "cumulate" the limit, it is asking the insurer to pay its obligation under each policy as expressly provided in the three policies, i.e., render to it the benefit of its bargain and pay for the loss the restaurant sustained during each year of the three years the policies were in effect.

1

As will be indicated below, the position of the policyholder is consistent with recent holdings of the New Jersey Supreme Court as well as courts across the nation addressing Employee Dishonesty in similar fact patterns and similar policy provisions. The position advanced by the policyholder is also consistent with New Jersey's Doctrine of Reasonable Expectations.

## LEGAL ARGUMENT

**RAYMOND'S IS AFFORDED $25,000 IN COVERAGE UNDER EACH OF THE THREE TRAVELERS POLICIES**

### A. Introduction – the Coverage Issue

Plaintiff Raymond's Restaurant Corporation d/b/a Raymond's (hereinafter "Raymond's") filed this action against the defendant, The Travelers Indemnity Company of America (hereinafter "Travelers"), seeking recovery under the Employee Dishonesty provisions of two Businessowners Policies. Raymond's and Travelers do not disagree as to the factual circumstances giving rise to the Employee Dishonesty claim. Michael D'Elia was employed by Raymond's from February 1, 2020 to January 23, 2022. While employed by the restaurant, Mr. D'Elia embezzled several million dollars. Travelers insured Raymond's under three policies in effect from September 16, 2019 to September 16, 2022. Each of the three policies covered the restaurant for Employee Dishonesty and carried a limit of $25,000 for loss occurring during the policy period. Accordingly, Raymond's sought recovery of $75,000 for the losses occurring during the three policy periods.

Travelers responded to Raymond's request for coverage under the three policies. It agreed that it owed $25,000 to Raymond's but contended that each of its policies contained a limitation restricting recovery to only one policy limit of $25,000. Travelers paid the $25,000 to Raymond's thereby reducing Raymond's

claim to losses sustained during only two policy periods.[1]

Because there is no factual dispute, Raymond's brings this motion seeking declaratory relief from the Court.[2]  Specifically, Raymond's seeks an adjudication that under the undisputed terms of the Travelers policies it is entitled to recover for losses sustained through the acts of Mr. D'Elia occurring during each of the three policy periods.  Travelers maintains that each policy issued to Raymond's included a provision providing that the limit of insurance does not "cumulate" year to year or policy period to policy period and therefore it owed only $25,000, i.e., one policy limit, which it has already paid.

## B. The Employee Dishonesty Provisions In The Travelers Policy

Each of the Travelers policies issued to Raymond's contain approximately 132 pages (Stipulated Joint Statement of Material Facts, ¶2, **Exhibit A**).  The Declarations Pages of the policies make no reference to "Employee Dishonesty". (Stipulated Joint Statement of Material Facts, **Exhibits A, B and C**).  The provisions relating to Employee Dishonesty are found in the Businessowners Coverage Part Deluxe Plan. (Stipulated Joint Statement of Material Facts, ¶1, 3 and 4, **Exhibit A**).

---

[1] When Travelers paid the $25,000 it did not identify the policy under which payment was being made.  Based upon the position advanced by Travelers, it appears that it paid the $25,000 under the Travelers policy in effect at the time notice of the embezzlement was rendered to the insurer by Raymond's.  Regardless of which policy under which Travelers paid the $25,000, the payment reduces the amount claimed by Raymond's under the policies to $50,000, i.e., $25,000 under each of the two remaining policies.

[2] Plaintiff on this motion does not seek a money judgment but rather only a declaration as to its entitlement to coverage under the three Travelers policies.

That Coverage Part included a 39-page "Businessowners Property Coverage Special

Form". (Stipulated Joint Statement of Material Facts, ¶1, 3 and 4, **Exhibit A**).

Within that form the Coverage Part provided, in pertinent part, as follows:

> d. Employee Dishonesty
>
> (1) We will pay for loss of or damage to Covered Property resulting directly from "Employee Dishonesty".
>
> We will pay for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates year to year or period to period.
>
> * * *
>
> 6. The most we will pay for loss or damage under this Additional Coverage in any one occurrence is $25,000.
>
> 7. With respect to this Additional Coverage, occurrence means all loss or damage caused by or involving the same "employee(s)" whether the result of a single act or series of acts.

(Page 5 of 39 pages of Businessowner Property Coverage Special Form),

In its coverage position communication dated May 8, 2024, Elizabeth Stillings

of Travelers quoted the above from the Employee Dishonesty provision as well as a

quotation from the Property Loss Conditions found at page 32 of 39 of the

Businessowners Property Coverage Special Form. (Certification of Francis X.

Garrity, Esq., ¶7, **Exhibit E**). That provision states as follows:

> E. PROPERTY LOSS CONDITIONS

5

The following conditions apply in addition to the Common Policy Conditions:

\* \* \*

7. Noncumulative Limit

No limit of Insurance cumulates from policy period to policy period.

(Page 32 of 39 pages of Businessowners Property Coverage Special Form)

Travelers set forth its position as to the $25,000 limit in the aforementioned

email communication of May 8, 2024 writing:

> You advised in your letter of April 4, that you were seeking $75,000 for Travelers policy years of 2020, 2021 and 2022. You stated that non-cumulation clauses have been held invalid by the New Jersey Supreme Court and referred to a case that was a Liability matter. Please understand that Travelers is not in agreement with this. Our policy language under the first party property policy is very specific and there would be no stacking of limits allowed under the policy.

(Certification of Francis X. Garrity, Esq., ¶7, **Exhibit E**)

## C. Out of State Cases Addressing Non-Cumulation Clauses in the Context of First Party Employee Dishonesty

In its notice of claim to Travelers, Raymond's referenced a New Jersey

Supreme Court case holding invalid a non-cumulation clause in the liability context.

That case is <u>Spaulding Composites Co. v. Aetna Cas. & Sur. Co.</u>, 176 <u>N.J.</u> 125

(2003). Indeed, <u>Spaulding Composites</u> involved liability policies but the New Jersey

Supreme Court's handling of the issue in that context suggests the manner in which

the non-cumulation clause in a first-party property policy would be treated. The

opinion will be discussed below, however, at this juncture let us consider how non-

cumulation clauses have fared before various courts across the country.

In <u>A.B.S. Clothing Collection, Inc. v. Home Ins. Co.</u>, 41 <u>Cal. Rptr</u>. 2d 166 (Court of App. Cal. 1995), the Court of Appeal of California considered how an employee dishonesty non-cumulation clause found in a Home Insurance Company policy should be construed. Home provided coverage to its insured, a clothing manufacturer, under three consecutive policies from April 4, 1989 to April 4, 1992. In May 1991, A.B.S. presented a claim to Home under its crime coverage. The claim showed that between July 1988 and May 1991 two employees had stolen a total of $1.4 million from an A.B.S. checking account. Home acknowledged the validity of A.B.S.'s claim and issued a draft in the amount of $100,000 which it contended represented the limit of its liability under the Employee Dishonesty coverage. A.B.S. disputed Home's interpretation of its liability and contended that Home was liable up to its limit of liability of $100,000 for each policy period coverage was in effect. In a comprehensive introduction to the issue, the appellate court noted that generally where indemnity is afforded through separate and distinct contracts for a specific policy period the insurer is generally held liable up to its limit of liability for each period. 41 <u>Cal. Rptr</u>. 2d at 168 (citing multiple cases). The court went on to note that the insured having paid several years' premiums to only allow one recovery was "contrary to the insured's reasonable expectation of coverage". 41 <u>Cal. Rptr</u>. 2d at 170. The Court quoted the non-cumulation clause in the Home

7

policy that provided as follows:

> Regardless of the number of years this insurance remains in force or the number of premiums paid, *no Limit of Insurance cumulates from year to year or period to period*.  (Emphasis added)

41 Cal. Rptr. 2d at 170.

Significantly, the non-cumulation clause in the Home policy is identical to that in the Travelers policies in issue.  The California Court of Appeal found the clause ambiguous holding:

> Courts called upon to construe "non-cumulation" clauses similar to the one in Home's policies have found them ambiguous at best.  While the clause might be construed to mean the insurer's liability is limited to a maximum aggregate amount, it can also reasonably be read to mean the limit of liability in one policy year cannot be carried over and added to the limit of liability in the succeeding policy year; nor can a loss in excess of a policy limit in one year be carried over and applied against the limit of liability in a succeeding year [citing cases].

41 Cal. Rptr. 2d at 171.

The California Court of Appeal went on to reference the Home policy definition of "occurrence" as "'all loss... whether the result of a single act or series of acts' without reference to a policy period or any other time boundary."  41 Cal. Rptr. 2d at 173.  It further noted that the policy stated that "the most we will pay for any one "occurrence" is the applicable Limit of Insurance shown in the Declarations. Id. The court concluded that these provisions created an ambiguity as to the extent of Home's liability because while defining "occurrence" as "all loss" suggests there can be only one occurrence during the life of the insurance, the provision restricting

liability "for any one occurrence" suggests there could be more than one occurrence. 41 <u>Cal Rptr</u>. 2d at 174.

After rejecting Home's defense of the non-cumulation clause, the California Court of Appeal remanded the matter to the trial court for further proceedings consistent with the Opinion.

In <u>Cincinnati Ins. Co. v. Sherman & Hemstreet, Inc.</u>, 581 <u>S.E. 2d</u> 613 (GA Ct. App. 2003), the Court of Appeals of Georgia addressed a non-cumulation clause again in the Employee Dishonesty context.  Cincinnati issued a commercial insurance policy for a three-year term from 1997 to 2000 and then renewed the policy for an additional three-year term.  The provisions of the two policies were the same.  The policyholder discovered that it was a victim of Employee Dishonesty and sought to recover the $50,000 limit during each year.  Citing the non-cumulation clause the insurer contended that the policyholder was entitled to only one limit of $50,000.  Here again, the policy contained the standard policy language: "Regardless of the number of years this insurance remains in force or the number of premiums paid, *no limit of insurance cumulates from year to year or period to period*." (Emphasis added) The Georgia appellate court rejected the insurer's position holding as follows:

> Under the circumstances of this case, we find the non-cumulation clause ambiguous.  Although it could be fairly understood to mean that the insurer's liability is limited to a maximum aggregate amount of $50,000, as argued by Cincinnati, it could also mean that the limit of

liability in one policy period cannot be carried over and added to the limit of liability in the succeeding policy period – although for each policy period, the insured could receive up to $50,000.

581 S.E. 2d at 615.

Ultimately, the Court held that the policyholder was entitled to recover $50,000 on each of the two three-year policies.

In Arc in Haw. v. DB Ins. Co., 544 F. Supp. 3d 1014 (D. Haw. 2021), the court again addressed the scope of coverage for Employee Dishonesty. The policyholder's bookkeeper embezzled several million dollars over a thirty-five-year period utilizing various schemes. Coverage was sought for the losses under five policies issued by DB Insurance Company extending coverage for Employee Dishonesty. Again, the insurer included a non-cumulation clause in its policies and relied on it to limit coverage to one policy limit. The insured sought coverage under each policy of five successive policies. The DB Insurance policy language was identical to that in the Travelers policies here. The court held the non-cumulation clause ambiguous and concluded that the policyholder was entitled to recover the limit of liability under each policy of the five DB insurance policies concluding that the insured had paid a premium for coverage in each year. 544 F. Supp. 3d 1027-1028.

Raymond's cites the above recent cases finding the subject non-cumulation clause ambiguous. For other cases citing similar clauses as ambiguous, see: White

Dairy Co. v. St. Paul Fire and Marine Insurance Co., (N.D. Ala. 1963), 222 F. Supp. 1014, 1017-1018; City of Miami Springs v. Travelers Indem. Co., 365 So.2d 1030 (FL App. 1978); Great American Indemnity Co. v. State, 229 S.W. 2d 850 (Tex. Civ. App. 1950).

Quite clearly, in the A.B.S. Clothing case the California Court of Appeal rejected the insurer's proposed construction of its non-cumulation clause finding the clause ambiguous. Likewise, the courts in Cincinnati Insurance and Arc in Haw., for the same reason, found the clause ambiguous. Here, when the Travelers policy speaks in terms of "no limit of insurance cumulates year to year or period to period," this language could mean that Raymond's could not carry over the limit year to year and aggregate the limits into one year. Since that is a reasonable construction of the clause, it is ambiguous. Raymond's is not asking this court to "cumulate," i.e. carry over and aggregate, the limit of liability. Rather, it is asking this court to require Travelers to pay what it agreed to pay in each year the policies were in effect. The policies provided for a limit of $25,000 in each year and Raymond's had more than $25,000 embezzled in each year. Because there were three years that the three policies were in effect when Mr. D'Elia embezzled funds from Raymond's, the policyholder seeks $25,000 in coverage for each year, or a total of $75,000.

For these several reasons, Raymond's requests that this court construe the Travelers policy finding the non-cumulation clause ambiguous and inapplicable and

enforce the provision extending coverage to it for $25,000 in each of the three (3) policies it bought from Travelers.

### D. New Jersey Supreme Court's Decision in <u>Spaulding Composites</u> Invalidating a Non-Cumulation Clause

Certainly Raymond's recognizes that the Employee Dishonesty provisions in the Travelers policy is a form of first party coverage while the Supreme Court in <u>Spaulding Composites</u> was addressing third-party liability. But, on consideration of the Supreme Court's opinion, the substance of the decision is applicable and renders direction to this Court as to how the Supreme Court would address the Travelers non-cumulation clause.

Spaulding Composites faced liability for environmental contamination at a superfund site in Fairfield Township, New Jersey. It sought coverage under multiple comprehensive general liability policies covering it for property damage occurring during the policy periods between 1967 and 1984. Nine of those policies were issued by Liberty Mutual Insurance Company during the period from 1976 to 1984. Excess coverage above the Liberty policies followed form to the Liberty policies. The Liberty primary policies contained a non-cumulation clause essentially providing that when multiple policies applied to a continuous trigger personal injury or property damage case, payments made under early policy years would reduce the amount in later years effectively limiting Liberty's exposure to one policy limit. That is what Travelers has attempted to do here by limiting its exposure to one policy

limit of $25,000 notwithstanding three years of coverage.

The Supreme Court ultimately rejected Liberty's non-cumulation clause as against public policy.  The court held that when it decided the Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437 (1994) and Carter-Wallace, Inc. v. Aetna Ins. Co., 154 N.J. 312 (1998) cases it established how a continuous trigger case would be allocated among multiple insurance companies on the risk.  Each carrier affording coverage to an insured during the period of continuous trigger would be required to meet its allocated obligation.  Like the Travelers policy here, the court held that what the non-cumulation clause seeks to avoid is the "cumulation" of insurance policy limits when only one insured act or "occurrence" is involved.  176 N.J. at 44.  The court noted that the effect is the creation of gaps in the available coverage allowing the insurer to avoid its fair share of responsibility." Id.

The Supreme Court concluded that pro rata sharing, i.e. each carrier paying its share for the period of time on the risk, has "at its core, a public policy that favors maximizing in a fair and just manner, insurance coverage for cleanup of environmental disasters." 176 N.J. at 45.  Applying the non-cumulation clause would allow the insurers "who are actually 'on the risk'" to be insulated from their share of liability in direct contravention of Owens-Illinois. 176 N.J. at 45.  Accordingly, the court concluded that the clause was unenforceable.  Id.

Spaulding Composites contemplated that in a continuous trigger situation

13

involving personal injury and/or property damage a loss could occur over a multi-year period and constitute a continuous occurrence. The Court held that each carrier must accept its responsibility for each period of coverage. Non-cumulation clauses were ruled invalid as against public policy. What is clear is that an insurance company that receives a premium for multiple years of coverage in a continuous trigger case must accept responsibility for its periods of coverage. When the Court refers to "public policy" that favors maximizing, "in a fair and just manner insurance coverage," the Court is referring to each policyholder receiving the benefit of its bargain. If each policy provided that coverage would extend to damage or injury during the policy period, then the insurance company would be held to its obligation.

Here the principle applies to the Travelers non-cumulation clause. As indicated, the policy by its express terms states that coverage extends to Employee Dishonesty, i.e. "for loss or damage you sustain through acts committed or events occurring during the policy period." This language is explicit in terms of informing the insured that it is covered for losses arising out of Employee Dishonesty "occurring during the policy period." But, the insurer then attempts to take that coverage away through the non-cumulation clause. It attempts to remove coverage extended during multiple policy years and substitute coverage for one policy year only.

By their very nature losses involving Employee Dishonesty are hidden and

thefts can occur over years. The whole point of purchasing coverage for Employee Dishonesty year after year is to protect against the risk that an employee is covertly embezzling funds or otherwise stealing from the employer. Coverage is reasonably expected for each year a premium is paid. The non-cumulation clause flies in the face of what would be the reasonable expectations of an insured and is therefore, void as against public policy.

### E. The New Jersey Supreme Court's Treatment of Employee Dishonesty Coverage in <u>Auto Lenders</u>

In <u>Auto Lenders Acceptance Corporation v. Gentilini Ford, Inc.</u>, 181 <u>N.J.</u> 245 (2004), the Supreme Court addressed an Employee Dishonesty endorsement in a policy issued to an automobile dealer. An employee falsified applications for financing on 27 different occasions involving automobiles sold by the dealership. The policy limited coverage to $5,000 "for loss or damage in any one occurrence." Like the Travelers policy here, the clause further provided "All loss or damage: (1) caused by one or more persons; or (2) involving a single act or series of related acts; is considered one occurrence." The Supreme Court had to determine whether the 27 fraudulent applications constituted one occurrence or 27 separate occurrences. If separate occurrences, the policyholder could recover $5,000 for each of the 27 fraudulent transactions. If one occurrence, the policyholder could recover only $5,000. The insurer's position was that the 27 fraudulent transactions were a "series of related acts" and thus there was only one occurrence. The Supreme Court rejected

this argument holding that there were twenty-seven (27) separate occurrences and observing that the insurer's position that the occurrence provision limiting all losses for Employee Dishonesty to a single $5,000 maximum would largely "nullify the protections afforded by the policy." 181 N.J. at 276. The Court concluded that the language in the policy should be read "so as to enable fair fulfillment of the stated policy objective. Citing Kievit v. Loyal Protection Life Ins. Co., 34 N.J. 475, 483 (1961). Id.

In its decision, the Supreme Court refused to enforce the policy language purporting to limit a theft involving a series of related acts as one occurrence because to do so would nullify the protection afforded by the policy and the policy objective. Instead, the Court sought to maximize the coverage construing the 27 fraudulent transactions as 27 occurrences. The Court's holding is instructive here. Travelers seeks to limit its obligation to Raymond's to one policy limit regardless of how many years its policies were in force and Raymond's paid premiums. Plaintiff, consistent with the decision in Auto Lenders, urges this court to maximize its coverage recognizing that Mr. D'Elia embezzled funds over the three years the Travelers policies were in force. Whether considered losses in each year from a single continuous occurrence or three separate occurrences in each policy year, plaintiff should be permitted recovery for each year the policy was in force and premiums were paid.

16

### F. The Travelers Policy Should Be Reformed to Meet the Reasonable Expectations of The Insured

There are three Travelers policies in issue. Each policy contains 132 pages. A policyholder seeking to determine a listing of coverage that he purchased would first review the Declarations Pages of the policy. He would find his name and identification of various coverage forms, policy limits, deductibles and a listing of the various policy forms including Businessowners and Commercial General Liability and various endorsements. In none of the Declarations Pages would the policyholder find any reference to Employee Dishonesty or what the policy limit was for that coverage. Instead, the policyholder would have to begin reading through the 132 pages of the policy. When he reached page 5 of the 39 pages of the Businessowners Property Coverage Special Form, he would find the reference to the Employee Dishonesty provisions. Having located the coverage, the policyholder would then have to interpret the various provisions of Employee Dishonesty to determine the coverage extended. As indicated above, litigation involving construction of Employee Dishonesty provisions over literally decades produces various results. The policyholder would be lost in terms of the coverage afforded as he sought to understand the non-cumulation language. She would not be able to determine the coverage afforded and consultation with a coverage lawyer would still leave her in a quandary.

The Businessowners Coverage Part provides for various coverage for

different risks including $25,000 for Employee Dishonesty.  The expectation of any policyholder would be that she has coverage for Employee Dishonesty, i.e., embezzlement or theft of funds or property to a limit of $25,000 during the policy year.  In point of fact, the first two sentences of the covering language is completely consistent with what a policyholder would reasonably expect.  Those sentences inform the insured that the policy covers for loss of or damage to covered property resulting from "Employee Dishonesty" and further provides that the company will pay for loss or damage sustained through acts committed or events occurring during the policy period.  Certainly the two sentences are clear and unambiguous.  They inform the insured that he is covered for loss of property occurring during the policy period.  Likewise, Subparagraph (6) is clear and unambiguous.  It provides that the insurance company will pay for loss or damage for any one occurrence of $25,000. The thought that coverage would extend to an employee embezzling money during the course of the year, hiding his conduct, is understood easily by a policyholder. But, the Travelers policy presents itself as highly complicated and technical.  As indicated earlier, the initial provision speaks in terms of the limit of insurance "cumulating" year to year or period to period regardless of the number of years premium has been paid.  Thus, right from the start the provision conflicts with what would be reasonably expected by the policyholder and conflicts with the first sentence of the paragraph.

18

Judge Sylvia Pressler in her landmark decision in <u>Lehrhoff v. Aetna Cas. & Sur. Co.</u>, 271 <u>N.J. Super.</u> 340 (App. Div. 1994) referenced the difficulty policyholders experience in attempting to read and understand the technical language in their policies. After noting that the Declarations Page of an insurance policy is of "signal importance" in terms of defining an insured's reasonable expectations, Judge Pressler commented on the problem a policyholder experiences in attempting to read the technical language defining the coverage. She wrote:

> We deem it unlikely that once having done so [review the Declarations Page], the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, and requalified meanings. Nor do we deem it likely that the average policyholder could successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations, and all the rest of the qualifying fine print, whether or not in so called plain language.

271 <u>N.J. Super.</u> at 347.

Judge Pressler went on to quote Justice Jacobs' decision in <u>Kievit v. Loyal Protect. Life Ins. Co.</u>, 34 <u>N.J.</u> 475, 482 (1961) wherein he wrote:

> When members of the public purchase policies of insurance, they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or hidden pitfalls and their policies should be construed liberally to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.' [citations omitted]

The Supreme Court in <u>Kievit</u> referred to "hidden pitfalls". What can be said for Travelers' attempt to limit coverage for Employee Dishonesty that occurs over

19

multiple policy years?  It informs the insured that the limit of insurance "does not cumulate" year to year or period to period.  This is the substance of Travelers defense.  It suggests that the policyholder as she reads pages upon pages of technical verbiage, she will immediately recognize that the provision stating that the limit of liability does not "cumulate".  That supposedly means that the insurer only pays one policy limit.  An unschooled reasonable policyholder could never understand or comprehend that meaning.

Respectfully, it is submitted that the position being advanced by Travelers in this case represents the "classic" basis for the Doctrine of Reasonable Expectations. In Auto Lenders, the Supreme Court refused to enforce the provision in an Employee Dishonesty policy seeking to limit coverage to a single occurrence when an individual engages in a series of wrongful acts.  Instead, the Court concluded that a reasonable policyholder would expect that she was covered for 27 fraudulent actions citing Justice Jacobs' decision in Kievit.

The tortured language in the Travelers policy is there as Travelers attempts to market its policies as covering for Employee Dishonesty during the policy period to a limit of $25,000.  This of course can be touted by the insurer as a "positive," i.e. that the policyholder receives $25,000 in coverage for the policy year.  But, when employee theft occurs over multiple policy years, not an unlikely event, Travelers seeks to pay only one limit.  Thus, the policy is something of a "bait and switch".

Yes, the policyholder receives $25,000 in coverage for the policy year but when embezzlement occurs over several years the policyholder gets one payment of $25,000, not payments of $25,000 for each policy year for which a premium was changed and paid.

The Doctrine of Reasonable Expectations functions to permit a court to broadly address an insurance policy to determine what a policyholder would "reasonably expect by way of coverage," and reform the policy to meet those expectations. Here, it is simply unreasonable to expect that a policyholder could read and digest more 132 pages in the Travelers policy, locate the Employee Dishonesty provision, and read and understand the implications of the non-cumulation clause, particularly where the provisions have been interpreted differently across the country. This court should reform the Travelers policy to declare the non-cumulation clause ambiguous and/or unenforceable and construe the Employee Dishonesty provisions to provide for coverage during each policy year coverage was in effect and plaintiff suffered losses. *See*, Vargas v. Hudson County Board of Elections, 714 F. Supp. 714 (D.N.J. 1993), aff'd. 949 F. 2d 665, 3rd Cir. 1991) (holding court empowered to reform language of policy to conform the reasonable expectations of insured).

21

## <u>CONCLUSION</u>

Raymond's suffered losses in excess of $25,000 during each of the Travelers three policy years. The policies affirmatively informed Raymond's that it was covered for each policy year it sustained a policy loss. Travelers relies upon the purported "non-cumulation clause" to limit its coverage to one policy year. That clause has been found by multiple courts to be ambiguous, and thus unenforceable to limit coverage under multiple years. Raymond's suggests that it is seeking recovery for each loss it suffered in each policy year as provided by the policy language. Whether viewed as individual occurrences in each policy year or a single occurrence over three policy years, Raymond's is entitled to payment of the policy limit on each policy.

Whether because of ambiguity in the non-cumulation provision, the public policy precedent in <u>Spaulding Composites</u>, or because the clause conflicts with the insured's reasonable expectations as in <u>Auto Lenders</u>, the provision in the Travelers policy purporting to deny Raymond's the benefit of its bargain, i.e. coverage for losses over three (3) policies, cannot be enforced.

<div style="margin-left:50%">

Respectfully submitted,
GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN
Attorneys for Plaintiff


BY: _____
          FRANCIS X. GARRITY
</div>

Dated: May 23, 2025