## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------X

RAYMOND'S RESTAURANT          :
CORPORATION d/b/a RAYMOND'S   :
(MONTCLAIR) and RAYMOND'S     :
RIDGEWOOD, LLC,               :          Civil Action No.:
                              :          2:24-cv-11189-SDW-JRA
          Plaintiffs,         :
                              :
   v.                         :
                              :
THE TRAVELERS INDEMNITY       :
COMPANY OF AMERICA and ACE    :
PROPERTY AND CASUALY          :
INSURANCE COMPANY,            :
                              :
          Defendants.         :
-------------------------------------------------X

## THE TRAVELERS INDEMNITY COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**CHIESA SHAHINIAN & GIANTOMASI PC**
**105 Eisenhower Parkway**
**Roseland, New Jersey 07068**
**(973) 325-1500**

**Attorneys for Defendant**
*The Travelers Indemnity Company of America*

On the Brief:

Adam P. Friedman
Claire M. Diallo

# Table of Contents

***Page***

Table of Authorities .................................................................................ii

Preliminary Statement ............................................................................. 1

Relevant Facts ........................................................................................ 2

    The Policy........................................................................................ 2

    The Loss, the Claim, and Travelers'
    payment of the coverage limit ........................................................ 6

    Commencement of this action by Raymond's ................................. 7

Travelers is entitled to summary judgment because Raymond's
was paid the full limit of coverage applicable to the Claim .................... 8

    The standards relevant to this motion ........................................... 8

    The plain language of the Policy defines a series of acts
    by a single employee as one occurrence subject to
    one $25,000 coverage limit for employee dishonesty .................... 9

    The Policy expressly precludes the cumulation
    of limits from policy period to policy period ................................ 11

    Raymond's is not entitled to payment from the policy
    in effect in 2019-20 (Count One) because the loss was
    discovered more than a year after this policy period expired....... 16

    Count Two, which asserts a claim against the policy
    in effect during the 2021-22 policy period, must be
    dismissed because the $25,000 that Travelers paid
    was paid pursuant to this policy ................................................. 17

Travelers is entitled to summary judgment dismiss the
"bad faith" claim (Count Five) because Raymond's
cannot succeed on its claims that Travelers breached the Policy.......... 18

Conclusion ......................................................................................... 19

# Table of Authorities

*Page*

## *Cases*

*Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*,
676 F.2d 56 (3d Cir. 1982) ..................................................................... 11

*Badiali v. New Jersey Mfrs. Ins. Grp.*, 107 A.3d 1281 (N.J. 2015) ........... 18

*Bomba v. State Farm Fire & Cas. Co.*, 879 A.2d 1252
(N.J. Super. Ct. App. Div. 2005)...................................................... 10-11

*Bus. Interiors, Inc. v. Aetna Cas. & Sur. Co.*,
751 F.2d 361 (10th Cir. 1984)................................................................. 11

*CIS Mgmt., Inc. v. Com. & Ind. Ins. Co.,* No. 23-cv-02689-BRM-JRA,
2025 WL 704805 (D.N.J. Mar. 5, 2025)................................................. 8-9

*Colliers Lanard & Axilbund v. Lloyd's of London,*
458 F.3d 231 (3d Cir. 2006).................................................................... 8

*Count Basie Theatre Inc. v. Zurich Am. Ins. Co.*, No. CV 21-00615
(JKS)(LDW), 2024 WL 2763762 (D.N.J. May 29, 2024) .......................... 10

*Dailey Law Firm, P.C. v. Travelers Indem. Co.,*
No. 23-10535, 2023 WL 8437615 (E.D. Mich. Dec. 5, 2023) .................. 12

*Frazier Indus. Co. v. Navigators Ins. Co.,*
149 F. Supp. 3d 512 (D.N.J. 2015).......................................................... 8

*Fullerton Surgery Ctr. v. Franklin Mut. Ins. Co.,*
No. A-5985,11T4, 2013 WL 5762560 (N.J. Super. Ct.
App. Div. Oct. 25, 2013) ....................................................................... 10

*Longobardi v. Chubb Ins. Co. of N.J.,*
582 A.2d 1257 (N.J. 1990) .................................................................... 12

*Madison Materials Co. v. St. Paul Fire & Marine Ins. Co.,*
523 F.3d 541 (5th Cir. 2008) ................................................................. 12

*Moore v. Walton,* 96 F.4th 616 (3d Cir. 2024) ......................................... 8

*Nav-Its, Inc. v. Selective Ins. Co. of Am.,* 869 A.2d 929 (N.J. 2005) ........... 8

*Owens-Ill., Inc. v. United Ins. Co.*, 650 A.2d 974 (1994) ......................... 15

*Pine Belt Auto., Inc. v. Royal Indem. Co.,* No. CIV.A. 06-5995 (JAP),
2008 WL 4682582 (D.N.J. Oct. 21, 2008) ................................................. 10

*Reliance Ins. Co. v. IRPC, Inc.,*
904 A.2d 912 (Pa. Super. Ct. 2006) ........................................................ 13

*Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt.*
*Osteopathic Med.,* 46 A.3d 1272 (N.J. 2012) ............................................ 8

*Shared-Interest Mgmt., Inc. v. CNA Fin. Ins. Grp.,*
725 N.Y.S.2d 469 (App. Div. 3d Dep't 2001) ......................................... 13

*Spaulding Composites Co. v. Aetna Cas. & Sur. Co.,*
819 A.2d 410 (N.J. 2003) .................................................... 14, 15, 16, 18

*Town of Anmoore, W. Va. v. Scottsdale Indem. Co.,*
No. 21CV142, 2022 WL 3221826 (N.D. W. Va. Aug. 9, 2022) ................. 12

**Rules**

Fed. R. Civ. P 56(a) ............................................................................... 8

**Other Authorities**

1 Couch on Ins. § 1:16 .......................................................................... 13

iv

35A Am. Jur. 2d Fidelity Bonds & Insurance § 76 ................................... 13

## Preliminary Statement

This motion simply asks the Court to enforce the unambiguous terms of an insurance policy as written. The Travelers Indemnity Company of America insured plaintiff Raymond's Restaurant Corporation d/b/a Raymond's (Montclair) against a loss that results directly from employee dishonesty, with a $25,000 per-occurrence limit. In response to the claim that Raymond's sustained a loss of more than $1 million resulting from the dishonesty of its employee, Michael D'Elia, that occurred across multiple policy periods – a loss that, per the express terms of the Policy, constitutes a single occurrence, Travelers paid the $25,000 coverage limit, in full satisfaction of its contractual obligation.

Despite the Policy's language, and despite Travelers having paid the coverage limit, Raymond's sued Travelers for more money. While it is unfortunate that D'Elia stole more than $1 million from Raymond's, for years Raymond's purchased employee dishonesty coverage from Travelers with a $25,000 limit and paid the corresponding premium. Had it wanted coverage with a higher limit, it could have obtained such coverage and paid an increased premium. Raymond's chose not to do so.

Travelers asks the Court to enforce the Policy as written, as the law requires, while Raymond's asks that the Court rewrite the Policy to delete the provisions that limit its recovery to $25,000, which the law does not allow the Court to do.  The parties agree that the material facts are undisputed.  As discussed below, the law compels that this motion be granted and that Travelers be awarded summary judgment dismissing Count One, Count Two, and Count Five of the Second Amended Complaint.[1]

## Relevant Facts

*The Policy*

Travelers issued a policy of insurance known as a "Restaurant Pac" to Raymond's with a policy period of September 16, 2019, to September 16, 2020 (the "Policy").[2]  Stipulated Joint Statement of Material Facts

---

[1] Count Three, Count Four, and Count Six of the Second Amended Complaint, involving the other plaintiff (Raymond's Ridgewood, LLC) and directed against the co-defendant, ACE Property and Casualty Insurance Company, were resolved and dismissed by Stipulation filed on April 1, 2025.  ECF Doc. No. 20.

[2] The policy number of the Policy is 680-8J231653-19-42.

("Stipulated Facts"), ¶ 1.  Travelers renewed the Policy for the policy periods September 16, 2020, to September 16, 2021,[3] and September 16, 2021, to September 16, 2022.[4]  *Id.,* ¶ 3.  The Policy also was renewed for the policy period September 16, 2022, to September 16, 2023, but the insurer on this renewal was The Charter Oak Fire Insurance Company, an affiliate of Travelers.[5]  *Id.*, ¶ 4.  The Policy and each renewal provided Raymond's with coverage for loss resulting directly from "employee dishonesty" (as defined in the Policy), pursuant to the Policy's terms and conditions.  The relevant terms of the Policy remained the same across each renewal.  *Id.,* ¶ 5.[6]

Employee dishonesty coverage is an "additional coverage" contained in the "Businessowners Property Coverage Special Form" portion of the Policy.  "Employee Dishonesty" is defined as

---

[3] Policy No. 680-8J231653-20-42.

[4] Policy No. 680-8J231653-21-42.

[5] Policy No. 680-8J231653-22-42.

[6] Attached as Exhibit A to the Stipulated Facts is the pertinent portion of the Policy.  The same terms as in the pages of the 2020-21 renewal attached appeared in 2019-20, 2021-22, and 2022-23 policy/renewals.

only dishonest acts, committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you, a partner, a "member", or a "manager" with the manifest intent to:

(a)     Cause you to sustain loss; and also

(b)     Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(1)     The "employee"; or

(2)     Any person or organization intended by the "employee" to receive that benefit.

*Id.,* § G (Property Definitions), ¶ 10.

The "employee dishonesty" coverage provides, in pertinent part:

d.     Employee Dishonesty

(1)     We will pay for loss of or damage to Covered Property resulting directly from "employee dishonesty".

We will pay for loss or damage you sustain through acts committed or events occurring during the Policy Period.  Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates year to year or period to period.

\*   \*   \*

(5)     We will pay for covered loss or damage only if discovered no later than one year from the end of the Policy Period.

(6)     The most we will pay for loss or damage under this Additional Coverage is $25,000.

Stipulated Facts, Exhibit A, § A (Coverage), ¶¶ 6(d)(1), (d)(5), (d)(6).

The employee dishonesty coverage section defines an "occurrence" as "all loss or damage caused by or involving the same 'employee(s)' whether the result of a single act or a series of acts." *Id.,* § A (Coverage), ¶ 6(d)(5).

If an insured continuously maintains employee dishonesty coverage, the Policy and each renewal provide that a loss that a prior policy would have covered "except that the time within which to discover loss or damages has expired" will be covered by the Policy/renewal in effect at the time of discovery. *Id.,* § A (Coverage), ¶ 6(d)(8). The Policy is clear that, in such a circumstances, the insured cannot recover more than the $25,000 per-occurrence limit of employee dishonesty coverage, notwithstanding the fact that the occurrence may have occurred over multiple policy periods:

The insurance provided under Paragraph (8) above is part of, not in addition to the Limit of Insurance described in paragraph (6) above and is limited to the lesser of the amount recoverable under:

(a)    This Additional Coverage, as of its effective date; or

(b)    The prior "Employee Dishonesty" insurance, had it remained in effect.

*Id.,* § A (Coverage), ¶ 6(d)(9).

*The Loss, the Claim, and Travelers' payment of the coverage limit*

Between February 1, 2020, and January 23, 2022, Michael D'Elia, an employee of Raymond's, stole $1,123,964.08 from Raymond's. *Id.,* ¶¶ 8-11. D'Elia accomplished the theft by writing checks to himself and paying his personal credit card bills, all from Raymond's account. *Id.,* ¶ 10.

Raymond Badach – the owner of Raymond's – discovered D'Elia's theft in August 2023. *Id.,* Exhibit B (Proof of Loss). Raymond's submitted a claim against the Policy for the loss resulting from D'Elia's dishonesty (the "Claim"), seeking $75,000 – the $25,000 coverage limit for the 2019-20, 2020-21, and 2021-22 policy periods. *Id.,* ¶12. On (or about) April 15, 2024, Raymond's submitted a sworn Proof of Loss to Travelers in support of the Claim. *Id.,* ¶ 13 and Exhibit B. On (or about) May 8, 2024, Charter

Oak paid the $25,000 coverage limit to Raymond's. *Id.*, ¶ 14. Raymond's appealed the determination that coverage was limited to $25,000 and requested that Travelers pay another $50,000; Travelers adhered to its determination that Raymond's was entitled to no more than the $25,000 paid.

*Commencement of this action by Raymond's.*

Raymond's commenced this action in New Jersey state court on November 14, 2024. ECF Doc. No. 1, ¶ 2. Travelers removed the case to this Court on December 16, 2024. ECF Doc. No. 1.

On January 29, 2025, Raymond's filed a Second Amended Complaint. ECF Doc. No. 10. Notwithstanding the Policy's clear language establishing that D'Elia's theft is one occurrence, that cumulation of limits across policy periods is barred, and that Travelers' liability is limited to $25,000, Raymond's claims entitlement to an additional $50,000. *Id.*, ¶¶ 12-13, 24-25. Travelers served and filed its Answer on March 3, 2025 (ECF Doc. No. 17), denying that it owed anything more than the $25,000 paid.

Because the parties agree that the material facts are not disputed, each is moving for summary judgment based upon a stipulated set of facts.

**1.    Travelers is entitled to summary judgment because Raymond's was paid the full limit of coverage applicable to the Claim.**

*A.    The standards relevant to this motion.*

Summary judgment "shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Moore v. Walton*, 96 F.4th 616, 622 (3d Cir. 2024).  The parties have stipulated that the material facts are undisputed.

The interpretation of an insurance policy is a question of law. *Frazier Indus. Co. v. Navigators Ins. Co.*, 149 F. Supp. 3d 512, 516 (D.N.J. 2015) (citing *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.,* 46 A.3d 1272, 1276 (N.J. 2012)).  Insurance policies are interpreted by giving words their plain and ordinary meaning.  *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236–37 (3d Cir. 2006) (citing *Nav-Its, Inc. v. Selective Ins. Co. of Am.,* 869 A.2d 929, 933 (N.J. 2005)).  Where policy language is clear, it should be interpreted as written.  *Id.*  "If a policy's terms are unambiguous, courts cannot rewrite the policy to be better than the one purchased."  *CIS Mgmt., Inc. v. Com. & Ind. Ins. Co.,*

No. 23-cv-02689-BRM-JRA, 2025 WL 704805, *7 (D.N.J. Mar. 5, 2025) (cleaned up).

Based upon the undisputed material facts and the plain meaning of relevant Policy language, Raymond's is not entitled to anything more than the $25,000 that has been paid, and Travelers is entitled to summary judgment dismissing the Second Amended Complaint.

**B.    *The plain language of the Policy defines a series of acts by a single employee as one occurrence subject to one $25,000 coverage limit for employee dishonesty.***

The Policy that Raymond's purchased limits employee dishonesty coverage to $25,000 per occurrence.  The Policy's definition of "occurrence" is clear and unambiguous: an "occurrence" is "all loss or damage covered by the same 'employee(s)' whether the result of a single act or a series of acts." *Id.,* Exhibit A, § A (Coverage), ¶ 6(d)(7).  There is no dispute that the Claim is based entirely upon one employee – Michael D'Elia – writing checks to himself and paying his personal credit card with Raymond's funds.  *Id.,* ¶¶ 8-10.  The Policy also contains an express non-cumulation clause,  precluding the stacking of coverage limits from policy period to policy period: "[r]egardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of

Insurance cumulates year to year or period to period." *Id.,* Exhibit A, § A (Coverage), ¶ (6)(d)(1). There cannot be any reasonable dispute that the loss constitutes one occurrence subject to the $25,000 per-occurrence coverage limit.

Case law squarely supports Travelers' position. *See, e.g., Pine Belt Auto., Inc. v. Royal Indem. Co.,* No. CIV.A. 06-5995 (JAP), 2008 WL 4682582, at *5 (D.N.J. Oct. 21, 2008), *aff'd,* 400 F. App'x 621 (3d Cir. 2010) (employee's conversion of money orders constituted a single occurrence where "occurrence" defined as "a single act or series of acts"); *N. Fullerton Surgery Ctr. v. Franklin Mut. Ins. Co.,* No. A-5985-11T4, 2013 WL 5762560, at *4-6 (N.J. Super. Ct. App. Div. Oct. 25, 2013) ("persistent and repetitive thefts" by one employee constituted one occurrence).

Travelers' position also is consistent with how courts have interpreted "occurrence" in other insurance contexts. *See, e.g., Count Basie Theatre Inc. v. Zurich Am. Ins. Co.,* No. CV 21-00615 (JKS)(LDW), 2024 WL 2763762, at *10 (D.N.J. May 29, 2024) (theater's various losses resulting from COVID-19 restrictions constituted one occurrence); *Bomba v. State Farm Fire & Cas. Co.,* 879 A.2d 1252, 1254-55 (N.J. Super. Ct. App. Div. 2005) (chain of events that resulted in injuries to multiple persons

constituted one occurrence where due to same cause).  As these cases discuss,

New Jersey uses the "cause" test to determine whether a loss is a single occurrence or multiple occurrences where the policy's definition of "occurrence" is not determinative.  The Third Circuit adopted the "cause" test in *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56, 61 (3d Cir. 1982).  In a case involving older "employee dishonesty" language (which did not include a definition of "occurrence" like the one in the Policy), the Tenth Circuit cited *Appalachian* in adopting the "cause" test and holding that a loss resulting from the dishonest acts of a single employee constituted one occurrence.  *Bus. Interiors, Inc. v. Aetna Cas. & Sur. Co.,* 751 F.2d 361, 363 (10th Cir. 1984).  Therefore, even if the Court does not consider the Policy's definition of "occurrence" to be determinative, under the "cause" test employed in New Jersey, D'Elia's theft constitutes one occurrence.

C.    *The Policy expressly precludes the cumulation of limits from policy period to policy period.*

The Policy contains an express non-cumulation provision, stating that "no Limit of Insurance cumulates from year to year or period to

period." Stipulated Facts, Exhibit A, § A (Coverages), ¶ 6(d)(1). This clear and unambiguous language should be enforced as written. *See* *Longobardi v. Chubb Ins. Co. of N.J.,* 582 A.2d 1257, 1260 (N.J. 1990) (insurance policy language is not ambiguous unless the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage"). The most that Travelers could be obligated to pay for the Claim is the $25,000 employee dishonesty coverage limit, which already was paid. *See, e.g., Dailey Law Firm, P.C. v. Travelers Indem. Co.,* No. 23-10535, 2023 WL 8437615, *2 (E.D. Mich. Dec. 5, 2023) (same relevant policy language as here obligated Travelers for payment of $25,000 employee dishonesty limit "for the entire event or occurrence"); *see also, e.g., Madison Materials Co. v. St. Paul Fire & Marine Ins. Co.,* 523 F.3d 541, 545 (5th Cir. 2008) (non-cumulation provision rendered fidelity insurer "only liable for one policy's limit if a single occurrence spans multiple policy periods or is covered by a prior insurance policy"); *Town of Anmoore, W. Va. v. Scottsdale Indem. Co.,* No. 21CV142, 2022 WL 3221826, *5 (N.D. W. Va. Aug. 9, 2022) (policy of fidelity insurance that included similar anti-stacking language that "prevent[ed] cumulation of policy limits from year to year" restricted insured's recovery to one

coverage limit); *Shared-Interest Mgmt., Inc. v. CNA Fin. Ins. Grp.,* 725

N.Y.S.2d 469, 472-73 (App. Div. 3d Dep't 2001) (under language similar to

Policy here, "the unambiguous antistacking provisions . . . would still

preclude the double recovery sought by plaintiff").

The renewals of the Policy do not expose Travelers to payment of

more than one limit of coverage for a loss that constitutes one occurrence.

*See, e.g.,* 35A Am. Jur. 2d Fidelity Bonds & Insurance § 76 ("Thus, annual

fidelity bonds covering several years are a continuous bonding scheme

with a single limit of insurance for employee dishonesty, rather than

multiple contracts, even though the original bond needs renewal on yearly

basis . . ."); *see also Reliance Ins. Co. v. IRPC, Inc.,* 904 A.2d 912, 916-17

(Pa. Super. Ct. 2006) (annual renewals of fidelity bond constituted "a

continuous bonding scheme with a single limit of insurance").[7]

Even where an occurrence spans different policy periods and

involves different policies – and not a "continuous bonding scheme" – the

"Additional Coverage" limits Travelers' obligation to the lesser of the

---

[7] Fidelity insurance insures, *inter alia,* against the risk of loss
resulting from the dishonesty or lack of fidelity of the insured's
employees.  1 Couch on Ins. § 1:16.

employee dishonesty coverage limit of the prior policy and the employee dishonesty coverage limit of the Policy.  Stipulated Facts, Exhibit A, § A (Coverages), ¶¶ 6(d)(8), 6(d)(9).  Thus, even if the Court considers each of the 2020-21, 2021-22, and 2022-23 policy periods (or any of them) to involve a new policy and not a renewal (notwithstanding the parties' stipulation that each is a renewal), the most that Raymond's can recover for the Claim is the $25,000 that already has been paid.

In its Second Amended Complaint, Raymond's alleges that, in *Spaulding Composites Co. v. Aetna Casualty & Surety Co.*, 819 A.2d 410 (N.J. 2003), the New Jersey Supreme Court determined that non-cumulation clauses are invalid as against public policy.  Second Amended Complaint, ¶¶ 14, 26. Raymond's is wrong; the Supreme Court's holding was confined to the considerations unique to environmental claims arising from mass toxic torts, which considerations are not present here.

*Spaulding* involved a claim against a CGL policy arising from environmental contamination at a waste cite.  The Supreme Court expressly limited its refusal to enforce a clear "non-cumulation" clause to unique public policy considerations particular to the "continuous trigger" clause and "pro rata allocation" doctrines applicable to complex

environmental insurance coverage claims. *Id.* at 411. The opinion is replete with references to the unique circumstances of continuous-trigger issues in such cases and its narrow application necessary to address mass toxic torts:

> [W]hen progressive indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a CGL policy. That is the continuous-trigger theory for activating the insurers' obligation to respond under the policies.

*Id.* at 414-15 (citing *Owens-Ill., Inc. v. United Ins. Co.,* 650 A.2d 974, 995 (1994)). Based upon its adoption of the "continuous trigger" theory, the Supreme Court considered how to allocate damages among insurers and chose "pro-ration by years and limits method of allocation." *Id.* at 416. The Court specifically described the need to "look beyond contract language and traditional rules of insurance policy interpretation to develop a fair and uniform methodology for addressing complex environmental insurance coverage issues" to meet public policy goals of maximizing resources for environmental clean-up. *Id.* at 419.

15

Fidelity insurance cases do not involve such concerns and do not seek (or need) to achieve such goals. Unlike complex environmental claims involving mass toxic torts affecting the public, fidelity insurance claims pertain to private matters. There is neither reason nor basis to consider anything beyond the language of the contract – the policy – into which the parties entered. *Spaulding* did not vitiate the enforceability of non-cumulation language in fidelity insurance, and no case has held to the contrary. Raymond's argument lacks merit and should be rejected.

D.    *Raymond's is not entitled to payment from the policy in effect in 2019-20 (Count One) because the loss was discovered more than a year after this policy period expired.*

A separate basis for granting Travelers' motion for summary judgment as to Count One is that the 2019-20 policy period had expired by the time Raymond's discovered the loss resulting from D'Elia's theft. Each policy/renewal provides coverage for a loss resulting from employee dishonesty "through acts committed or events occurring during the Policy Period." Stipulated Facts, Exhibit A, § A (Coverage), ¶ 6(d)(1). For an employee dishonesty loss to be covered, however, it also must be "discovered no later than one year from the end of the Policy Period." *Id.,* ¶ 6(d)(5).

The parties stipulate that D'Elia's theft ended on February 23, 2022, and that Raymond's discovered the loss in August 2023. August 2023 is, of course, more than a year after the expiration of the 2019-20 policy period. Raymond's thus cannot recover from the policy in effect during the 2019-20 policy period, and Count One should be dismissed.

E.    *Count Two, which asserts a claim against the policy in effect during the 2021-22 policy period, must be dismissed because the $25,000 that Travelers paid was paid pursuant to this policy.*

A separate basis for dismissing Count Two is that, by the Policy's express terms, Travelers' payment was made pursuant to the policy in effect during the 2021-22 policy period. It thus cannot be in breach of this policy.

As mentioned above, employee dishonesty coverage covers loss resulting from acts or events that occur during the policy period. D'Elia's theft scheme, spanning from February 2020 to January 2022, included acts that occurred during the 2021-22 policy period. The 2021-22 policy period ended in September 2022. Discovery of the loss in August 2023 was within a year of the end of this policy period. By the Policy's terms, the policy in effect for the 2021-22 policy period covered this loss, and the $25,000 payment of the employee dishonesty coverage limit could only be

pursuant to this policy.  Travelers therefore did not breach the 2021-22

policy, and Count Two must be dismissed.[8]

### 2.    Travelers is entitled to summary judgment dismissing the "bad faith" claim (Count Five) because Raymond's cannot succeed on its claims that Travelers breached the Policy.

To establish first-party "bad faith", an insured must demonstrate

that "no debatable reasons existed for the denial of benefits".  *Badiali v.*

*New Jersey Mfrs. Ins. Grp.*, 107 A.3d 1281, 1288 (N.J. 2015).  Raymond's

here therefore must demonstrate that it can establish, as a matter of law,

that Travelers' position that it is not entitled to anything more than

$25,000 was not "fairly debatable" and succeed on summary judgment to

maintain a viable claim for bad faith.  *Id.*  Because Raymond's Policy

---

[8] Travelers advises the Court that, in correspondence with Raymond's, it referred to the $25,000 payment as being made pursuant to the policy in effect for the 2022-23 policy period.  This reference is erroneous.  The only policy that could cover the loss was the policy in effect during the 2021-22 policy period.  The "Additional Coverage" in the 2022-23 policy would not apply because Raymond's time to discover the loss had not expired for the 2021-22 policy period.  Because Travelers paid the $25,000 to which Raymond's was entitled, Raymond's was not prejudiced by this error; to the contrary, its claim to payment in excess of $25,000 is premised entirely upon the argument that *Spaulding* leaves the non-cumulation provision in the Policy without effect.

claims against Travelers should  be dismissed, it cannot succeed on a "bad faith" claim against Travelers and this claim should be dismissed as well.

## Conclusion

For the reasons described above, Raymond's is not entitled to any further payment from Travelers.  Consequently, Travelers should be awarded summary judgment dismissing Count One, Count Two, and Count Five of the Second Amended Complaint, with prejudice.

Respectfully submitted,

**CHIESA SHAHINIAN & GIANTOMASI PC**
Attorneys for Defendant
*The Travelers Indemnity Company of America*

By: ____*/s Adam P. Friedman*____
        Adam P. Friedman

Dated: May 23, 2025