UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND'S RESTAURANT CORPORATION d/b/a RAYMOND'S (MONTCLAIR) and RAYMOND'S RIDGEWOOD, LLC,<br><br>   Plaintiffs,<br><br>  v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF AMERICA and ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>   Defendants. | Civil Action: 2:24-cv-11189 (SDW-JRA) |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN
A Professional Corporation
425 Eagle Rock Avenue, Suite 202
Roseland, NJ 07068
Telephone: 973-509-7500
Attorneys for Plaintiffs

**On the Brief:**
**Francis X. Garrity, Esq.**
Attorney ID# 009471973

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| LEGAL ARGUMENT | 2 |
|     THE TRAVELERS POLICIES EXTEND COVERAGE TO A LIMIT OF $25,000 FOR EACH POLICY | 2 |
|     A. Raymond's Coverage Position | 2 |
|     B. The Travelers Defenses | 3 |
|         (1) Single Occurrence | 3 |
|         (2) The Non-Cumulation Clause | 8 |
|         (3) Discovery More Than One Year After the Policy Period Expires | 10 |
|         (4) Bad Faith | 13 |
| CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**CASES** **PAGE**

Auto Lenders Acceptance Corporation v. Gentilini Ford, Inc.,
 181 N.J. 245 (2004) ................................................................................................ 8

Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437 (1994) ........................... 4, 5, 8

Pickett v. Lloyd's, 131 N.J. 457, 473 (1993) ......................................................... 13

Spartan Iron and Metal Corp. v. Liberty Ins. Corp.,
 6 Fed. Appx. 176 (4th Cir. 2001) ............................................................. 6, 7, 8, 10

Spaulding Composites Co. v. Aetna Cas. & Sur. Co., 176 N.J. 125 (2003) ........... 10

Vargas v. Hudson County Board of Elections, 714 F. Supp.
 714 (D.N.J. 1993), aff'd. 949 F. 2d 665, 3rd Cir. (1991) ........................................ 14

## **PRELIMINARY STATEMENT**

This case involves coverage under multiple policies of insurance. Plaintiff has been paid under one policy but seeks recovery under two additional policies. The parties agreed on the relevant policies, but now an issue has arisen as to a fourth policy.

After the parties stipulated that Travelers paid on the 2022/2023 policy, in its brief, Travelers now contends that it paid Raymond's loss under the 2021/2022 policy. Next, Travelers contends that there can be no recovery under the 2019/2020 policy because the loss was discovered more than one year after the end of the policy period. The 2019/2020 policy is not before the Court as referenced in the Parties' Stipulation. However, now that Travelers has changed its position as to which policy under which it paid Raymond's claim, the 2019/2020 policy must be placed before the Court. Accordingly, on behalf of Raymond's this writer has placed the policy Declarations before the Court via Certification. As indicated in the Certification, the material excerpts from the 2019/2020 policy are identical to those currently before the Court.

In light of the change in position of Travelers with respect to the policy under which it paid Raymond's, it is the plaintiff's position that the four policies potentially affording coverage should each be before the Court, i.e., 2019/2020, 2020/2021, 2021/2022, 2022/2023. Raymond's is not seeking anything more than $50,000 in

1

this action. Its contention is that it suffered a loss under the 2019/2020, 2020/2021 and 2021/2022 policies. It has been paid $25,000 and seeks an additional $50,000 under these policies.

As will be indicated below, although no theft occurred while in force, there is the potential for coverage to extend under the 2022/2023 policy of Travelers. This is because of the unique provisions found in the Employee Dishonesty covering language. Regardless, Raymond's is seeking payment of $50,000 or three years of coverage ($25,000 having already been paid).

## LEGAL ARGUMENT

### THE TRAVELERS POLICIES EXTEND COVERAGE TO A LIMIT OF $25,000 FOR EACH POLICY

**A. Raymond's Coverage Position**

In its initial Brief, Raymond's set forth its claim for coverage under the three policies issued by Travelers during the periods 2019 to 2020, 2020 to 2021 and 2021 to 2022. The provisions of the Employee Dishonesty in each of the aforementioned Travelers' policies provided as follows:

> d. Employee Dishonesty
> (1) We will pay for loss of or damage to Covered Property resulting directly from "Employee Dishonesty".
> We will pay for loss or damage you sustain through acts committed or events occurring during the policy period.
>
> * * *

2

> 6. The most we will pay for loss or damage under this Additional Coverage in any one occurrence is $25,000.

\* \* \*

Raymond's position is that its employee stole funds over the course of three policy years, and since the policy provision in each speaks in terms of "loss or damage you sustain through acts committed or events occurring during the policy period," Travelers should be required to extend coverage for those losses under each policy. The language speaks in terms of the time of loss or damage, i.e. "occurring during the policy period," and informs the insured of the protection afforded. The $25,000 limit for loss or damage references "in any one occurrence." If Mr. D'Elia stole money during the 2019/2020 policy year of Travelers, and he did, a loss has occurred during the policy period. If he stole during the 2020/2021 policy year and during the 2021/2022 policy year, and he did, a loss has also "occurred" in those years. Again, the policy speaks in terms of loss or damage "occurring." If there have been funds stolen during each policy year as a result of covert employee theft, then the loss or damage has "occurred during each policy period."

## B. The Travelers Defenses

### (1) Single Occurrence

Travelers maintains that its coverage for Employee Dishonesty limits recovery to only one policy limit of $25,000 if it arises out of one "occurrence". The policy defines "occurrence" as meaning "all loss or damage caused by or involving

3

the same 'employee' whether the result of a single act or series of acts." Travelers contends that D'Elia's theft over three policy years qualifies as a single "occurrence" and therefore, it owes only one limit of $25,000.

Initially, the problem with the Travelers' position is that the covering language of the Employee Dishonesty provision speaks in terms of the loss "occurring" in time "during the policy period." The policy states:

> We will pay for loss or damage you sustained through acts committed or events occurring during the policy period.

Thus, the language in the provision itself, to the extent it refers in time to "occurring during the policy period," it is in conflict with the purported limiting language of "occurrence" encompassing a "series of acts". The root word "occurs" is in both phrasings. Clearly the conflicting language creates an ambiguity in the policy.

The second problem with the Travelers' position is that it is in conflict with the New Jersey Supreme Court's treatment of the term "occurrence" when that term is used to describe coverage for bodily injury or property damage "caused by an occurrence." In Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437 (1994) the Court addressed issues of coverage arising when bodily injury or property damage occurs over multiple policy periods. Before the Court was the issue of coverage for bodily injury and property damage arising out of exposure to asbestos over not just years but literally decades. While the Court concluded that consequential damage

4

arising out of the sale of asbestos qualified as a single "occurrence," it further concluded that the damage occurred over multiple policy years. The Court held in its opinion as follows:

> To recapitulate, we hold that when progressive, indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a CGL policy. That is the continuous trigger theory for activating the insurers' obligation to respond under the policies.

138 N.J. at 478-479.

Indeed, Owens-Illinois involved a liability policy while the Travelers policy is a first party property policy. Nonetheless, the Court's holding applies across both types of coverage because the underlying rationale is the same. Damage caused by the sale of asbestos over years was considered to be one causative event, i.e. one occurrence. Nonetheless, the Court concluded that when injury occurs in multiple policy years, coverage extends in each of the triggered policy years.

Here, Travelers policy affirmatively states that it affords coverage for "loss or damage you sustain through the acts committed or events occurring during the policy period." Accordingly, Travelers is informing the insured that coverage will extend when, in time, loss or damage is experienced by Raymond's, i.e. during each policy period. Whether the loss occurs during one, two or three policy periods as a result of a series of fraudulent transactions there is still damage during each policy period even if those damages arise out of a single occurrence. Thus, it matters not that the

5

policy defines a single act or a "series of acts" as an "occurrence". If those acts are the causative event occurring in different policy periods but result in damage occurring during the "policy period," then coverage extends under each policy period.

The position advanced in this respect on behalf of plaintiff is consistent with a decision of the United States Court of Appeals for the Fourth Circuit. Spartan Iron and Metal Corp. v. Liberty Ins. Corp., 6 Fed. Appx. 176 (4th Cir. 2001). There the policyholder was issued two one-year term policies by Liberty Mutual covering it for Employee Dishonesty. A theft occurred over both policy years and the policyholder sought recovery of $100,000 under each policy, or $200,000 in total. The insurer took the position that the acts of theft constituted an "occurrence" defined as "all loss caused by, or involving, one or more employees, whether the result of a single act or series of acts." The court, however, noted that the definition did not affirmatively indicate whether a series of acts includes acts occurring outside the policy term. 6 Fed. Appx. at 178. Ultimately, because of ambiguity in the definition of occurrence, the court concluded that the policyholder was afforded coverage under both policies holding:

> In summary, although the question of coverage is a close one, we find that the definition of "occurrence" in Liberty's policies is ambiguous, and that it is not clear that the two policies issued to Spartan Iron should be construed as one continuous policy rather than separate and independent contracts. Accordingly, we are not persuaded that Liberty has limited its liability for any one employee's related acts of

6

dishonesty to the coverage provided by a single policy. As a result, Spartan Iron was properly entitled to judgment as a matter of law.

6 Fed. Appx. at 180.

The court's conclusion in Spartan Iron is exactly supportive of plaintiff's position here. The definition of "occurrence" in the Travelers policy referencing "a series of acts" does not state whether it applies only to the policy in effect that year or whether it applies to multiple policies. Raymond's position is that there can be an occurrence, i.e. a series of acts, but the effect of the occurrence as a cause can extend over multiple policy years. Travelers policy does not state whether the limitation in coverage relates solely to the singular policy or whether it extends to other policies issued by Travelers.

It should be noted that employee dishonesty occurs covertly. Certainly the employee engaged in embezzling funds does not "announce" his or her actions. Likewise, the covert actions of an employee can occur over a number of policy years. Effectively, Travelers is engaged in "sleight of hand" while it informs the insured that coverage extends to losses that "occur in each policy period" but then suggests that all of the losses sustained constitute one "occurrence," thereby defeating the very purpose of purchasing coverage every year. It is hard to imagine that a reasonable policyholder could ever understand and comprehend the concept suggested by Travelers that all of the losses sustained over multiple policy years constitute one "occurrence" with only one limit. On the contrary, the policy speaks

7

in terms of extending coverage for losses that "occur" during the policy period. As the Supreme Court suggested in <u>Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.</u>, 181 <u>N.J.</u> 245 (2004) a provision of an Employee Dishonesty policy that largely will "nullify the protections afforded by the policy" conflicts with the very basis for purchasing the policy in the first place and is unenforceable. 181 <u>N.J.</u> at 276.

Therefore, while Travelers' use of the term "occurrence" defines it as the cause for the loss, the covering language refers to when the damage is sustained, i.e., during the policy period. That is exactly what the Supreme Court in <u>Owens-Illinois</u> was addressing. Yes, damage caused by exposure to asbestos is a single occurrence, but when the damage occurs over multiple policy years, coverage extends.

Travelers in its Brief refers to several cases dealing with the term "occurrence" defined as including a single act or series of acts. But in none of those cases did the court address the New Jersey Supreme Court decision in <u>Owens-Illinois</u> or the ramifications of the policy language expressly stating that coverage extends to the damage "occurring during the policy period." Likewise, none of those cases addressed the ambiguity created when the occurrence language includes acts outside of the policy term as addressed in <u>Spartan Iron</u> and found to create an ambiguity. Thus, those cases are inapposite.

### (2) **The Non-Cumulation Clause**

Each of the Travelers policies includes a clause providing as follows:

8

7. Non-Cumulative Limit

No limit of insurance cumulates from policy period to policy period.

The Travelers policies further provide under the Employee Dishonesty provisions as follows:

> We will pay for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates year to year or period to period.

Travelers relies upon these two provisions to support its position that it pays only one limit of $25,000 for all losses sustained even over multiple policy years.

In its initial Brief, Raymond's cited to multiple cases across the country finding the non-cumulation clause in insurance policies covering for Employee Dishonesty ambiguous. Each of those cases reasoned that the clause could be read to refer to preclusion of carrying over and adding the limit in the succeeding policy year. Accordingly, because of the ambiguity, the courts refused to enforce the provision. See pages 7-11 of Plaintiff's Brief citing to case law supporting ambiguity.

Travelers in its Brief in support of summary judgment cites to case law enforcing the non-cumulation clause in various Employee Dishonesty circumstances. See, Defendant's Brief at page 12-13. While plaintiff maintains that the out-of-state cases finding ambiguity in the construction of the provision are better reasoned in terms of why the non-cumulation clause is ambiguous, ultimately the

9

Court simply has to make a decision on whether it finds the clause ambiguous or not. In further support of plaintiff's argument, we note the decision of the United States Court of Appeals for the Fourth Circuit in Spartan Iron and Metal Corp. v. Liberty Ins. Corp., 6 Fed. Appx. 176 (4th Cir. 2001). On the issue of the non-cumulation clause the court noted the conflict in decisions across the country, and concluded that the clause was ambiguous. Raymond's also notes the decision of the New Jersey Supreme Court in Spaulding Composites Co. v. Aetna Cas. & Sur. Co., 176 N.J. 125 (2003) (holding invalid a non-cumulation claim in a series of general liability policies).

### (3) Discovery More than One Year After the Policy Period Expires

Notwithstanding the stipulation that Travelers paid the $25,000 under the 2022/2023 policy, in its Brief it now changes its position and states that, in fact, it paid the loss under the 2021/2022 policy. Travelers points to the provision in the Employee Dishonesty covering language that provides as follows: "(5) We will pay for covered loss or damage only if discovered no later than one year from the end of the policy period."1 Travelers contends that the quoted provision would preclude coverage under the 2019/2020 policy.

---

1 This limiting language was not raised by Travelers in any of its coverage position correspondence. See, Certification of Francis X. Garrity, Exhibits A, B, C, D, E, F, G, H and I. Thus, the insurer waived the provision.

10

At the outset, we again note that the Employee Dishonesty provision affirmatively states that it will pay for loss or damage "occurring during the policy period". Thus, this provision referencing discovery and notice within one year after the end of the policy period is in direct conflict with the affirmative covering language. In this respect, the policy is ambiguous and this provision is unenforceable.

Further, requiring discovery defeats the very purpose of the coverage nullifying it. Employees do not "announce" their embezzlement. Thus, the clause violates public policy and defeats the reasonable expectations of the insured.

Beyond the issue of enforceability, there is a provision in the policy that is something of a "catch-all" that renders the Notice provision irrelevant. Clause 8 in the Employee Dishonesty provision provides that coverage is extended under the policy for any loss that occurred prior to the inception of coverage even in those instances where the time within which to discover the loss or damage has expired. This provision is in each policy issued by Travelers. Let us consider the implications.

The 2022/2023 policy afforded Employee Dishonesty coverage to Raymond's. Employee theft did not take place during this policy period but Clause 8 affirmatively would extend coverage to Raymond's for the losses that occurred under any prior policy. Again, this provision affirmatively provides that coverage

11

will extend to Employee Dishonesty if coverage would have extended under a prior policy but for the fact that the time within which to discover the loss or damage has expired. Raymond's gave notice to Travelers during this policy year. Raymond's had coverage during each of the policy years commencing on September 16, 2019 during which D'Elia stole the funds. In other words, Raymond's had coverage in place during the three policy years, i.e., 2019/2020, 2020/2021 and 2021/2022. Each policy contained the same Clause 8 stating that coverage would extend under the policy so long as coverage was in place under prior policies but the time to discover the theft had expired. Thus, the 2022/2023 policy affords coverage to a limit of $25,000. The company paid on the 2021/2022 policy and thus that policy is not in issue. The 2020/2021 policy contained the same Clause 8 providing that coverage extends if a prior policy covered but the time period for discovery had expired. That would be the 2019/2020 policy.

Therefore, the 2022/2023 policy and the 2020/2021 policy under Clause 8 both afford coverage to the extent that there is a loss that cannot be recovered under a prior policy because of failure to discover it within one year after the policy period ends. As applied to the 2022/2023 that would include the 2020/2021 policy and as to the 2020/2021 that would include the 2019/2020 policy. Both policies afford coverage and discovery is irrelevant.

12

Travelers would point to Clause 9 purporting to limit coverage to a single limit of insurance. Clause 9, however, is nothing more than another attempt at a non-cumulation clause in a different form. It purports to limit coverage to one limit if it has been paid under another policy. Here again, as a non-cumulation clause, the question arises as to whether it is enforceable or ambiguous. Plaintiff maintains that it is both ambiguous and unenforceable.

### (4) Bad Faith

Under New Jersey law a first party property insurer can be liable for bad faith if it wrongfully denies coverage and loses on summary judgment. Pickett v. Lloyd's, 131 N.J. 457, 473 (1993). A decision as to potential bad faith on the part of Travelers cannot be determined until the Court rules. If the ruling is in favor of plaintiff, the plaintiff's claim for bad faith accrues.

## CONCLUSION

The position advanced by the plaintiff, Raymond's, is consistent and straightforward grounded in the language in the Travelers policies. Mr. D'Elia's theft occurred during three policy periods during which Travelers afforded coverage commencing with the September 16, 2019 policy and ending with the September 16, 2021 policy. Each of those policies affirmatively stated as follows: "We will pay for loss or damage you sustain through acts committed or events occurring during the Policy Period."

The above could not be any more clear. Travelers was telling Raymond's that it had coverage for Employee Dishonesty that occurs during the policy period. Travelers covered Raymond's during each of the three periods in issue. Indeed, the Travelers policy speaks in terms of non-cumulation of policy limits, discovery of loss, and a single act or a series of acts, all with the intent of limiting Raymond's recovery. Each of these provisions on which Travelers relies has been addressed at length. New Jersey law applies to the construction of the Travelers policies. Plaintiff suggests that this Court step back, look at what has occurred, what Travelers offered and apply the Doctrine of Reasonable Expectations as allowed by the New Jersey Supreme Court. While Raymond's has challenged the various provisions of the Employee Dishonesty covering language, it is clear that no reasonable policyholder could ever comprehend the language and the conflicting case law across the country construing similar language. In Vargas v. Hudson County Board of Elections, 714 F. Supp. 714 (D.N.J. 1993), aff'd. 949 F. 2d 665 (3rd Cir. 1991), Judge Debevoise, then sitting in the United States District Court reformed the policy before him based upon the Doctrine of Reasonable Expectations. The insurance policy at issue before him did not extend coverage to civil rights violations involving election discrimination. However, Judge Debevoise, looking broadly at what the policyholder could expect, reformed the policy finding coverage for the allegations asserted against the policyholder. Raymond's believes that it has comprehensively

14

challenged the positions advanced by Travelers as to why it should be allowed to pay only one policy limit when three policies were involved. If the Court is not satisfied, Raymond's urges this Court to step back and adjudicate coverage in conformance with New Jersey's approach, i.e., reasonable expectations of the insured, and reform the Travelers policies to effect coverage under each for Raymond's loss "occurring during the policy" as expressly represented in the Travelers policies.

Respectfully submitted,<br>
GARRITY, GRAHAM, MURPHY,<br>
GAROFALO & FLINN<br>
Attorneys for Plaintiff

Dated: June 2, 2025

/s/ *Francis X. Garrity*

BY: FRANCIS X. GARRITY